CAMERON v. ROYAL NEIGHBORS OF AMERICA.

1. INSURANCE—LIFE INSURANCE—FRATERNAL INSURANCE—FRAUD —ESTOPPEL—EVIDENCE—SUFFICIENCY.

In an action against a mutual benefit insurance company on a benefit certificate evidence *held*, insufficient to sustain the burden of proof as to an estoppel of defendant, through knowledge of the habits of the insured obtained by its deputy supreme oracle before delivery of the certificate, to claim as a defense that deceased had made false statements as to his habits in the use of liquor and drugs in the application.

2. EVIDENCE—HEARSAY—ADMISSIBILITY.

In an action against a mutual benefit insurance company on a benefit certificate, in which it is contended by plaintiff that defendant was estopped by knowledge of the habits of the insured before he signed the certificate to set up the defense of fraudulent statements in the application as to the use of intoxicating liquor and drugs by insured, the testimony of a local officer that she told a supreme camp representative before the certificate was signed of a rumor that insured was a user of liquor and a drug fiend is incompetent as hearsay.

3. INSURANCE—LIFE INSURANCE—FRAUD—ESTOPPEL.

The basis of an estoppel of the insurer to claim fraud in the making of false statements in an application for mutual benefit insurance as to the use of liquor and drugs, is not afforded by a mere rumor as to the use of liquor and drugs by the applicant which is communicated by a local officer of the society to a deputy supreme oracle of the head camp after the application is signed and before the policy is signed.

4. SAME—FRAUD—BURDEN OF PROOF.

The burden of proof was on plaintiff to prove such knowledge on the part of the defendant of the habits of deceased as to constitute an estoppel to set up the defense of false statements in the application as to the use of liquor and drugs.[1]

[1]As to scope and effect of provisions in policies of insurance forbidding use of intoxicating liquor, see comprehensive note in 15 L. R. A. (N. S.) 206; 25 L. R. A. (N. S.) 1241.

Error to Eaton; Smith, J. Submitted April 13, 1917. (Docket No. 29.) Decided July 26, 1917.

Assumpsit by Nellie M. Cameron against the Royal Neighbors of America for the amount of a benefit certificate. Judgment for plaintiff. Defendant brings error. Reversed.

*Dean W. Kelley* and *J. Earle Brown* (*U. A. Screech-field,* of counsel), for appellant.

*Gardner & Hood,* for appellee.

The declaration in this case alleges that the sum of $500 is due upon a beneficiary certificate issued by the defendant society upon the life of Alexander H. Cameron, wherein the plaintiff is named as beneficiary. The defendant pleaded the general issue, and set up as affirmative defense that the deceased had made false and fraudulent statements concerning his habits in the use of liquor and drugs in his application for insurance, and as a further affirmative defense that he became intemperate in the use of alcoholic drinks and in the use of drugs in violation of the terms of his contract, and that his death resulted, both directly and indirectly, therefrom. The case was tried before a jury, and a verdict rendered in favor of the plaintiff in the sum of $567.96.

The deceased was a physician, and had resided in the village of Dimondale, Mich., for about eight years prior to his death. On January 12, 1911, he made written application to the defendant society for insurance, which was reported favorably, and the benefit certificate was issued January 20th, and delivered to him on the 22d of the same month. Among others appeared the following questions and his answers thereto upon the application:

"18. a. Have you within the last seven years con-

sulted any person, physician or physicians in regard to personal ailment? No.

"22. a. Do you abstain entirely from the use of intoxicating liquors? Yes. d. Have you ever taken any treatment for cure of the liquor habit? No. e. Do you use intoxicating liquors, daily, and if not, state how frequently and also state kind and quantity consumed? No. * * *

"23. c. Do you use, or have you used morphine, opium, chloral, cocaine, or any form of narcotic or stimulant? No."

On October 2, 1911, he was taken sick, and came into his office, where his wife, the plaintiff, found him. He was pale, and said he did not feel well, and he went to his room and laid down upon the bed. Plaintiff looked in at him and found him sleeping, and a short time later found him gasping for breath and black in the face. She called a doctor, who attended him until his death, which occurred in the evening of the same day. Upon the death certificate, which was signed by the physician who attended him, the cause of death was stated to be paralysis.

Upon the trial of the case the defendant introduced evidence to show that for several years prior and at the time of the deceased's application for insurance he had been a heavy user of liquor and of the drug chloral, that he had undergone treatment for the liquor habit, and that his death was caused by an overdose of chloral. The plaintiff contended, and introduced evidence to show, that he had never been a heavy indulger of liquor or drugs, that he had never taken treatment for the liquor habit, and that his death was not caused by a dose of chloral. The plaintiff further contended that, even if it be found that he had been a user of liquor and drugs prior to and at the time of his application, and so made fraudulent answers to the questions asked therein, the defendant knew of this fact, and so was estopped to set up the fraudulent

answers in defeat of the policy of insurance. ꞈAs evidence to this effect the plaintiff introduced testimony that one Minnie Bateman, local camp recorder, had, after the application was signed and before it was delivered to Dr. Cameron, said to Frederika Runner, the deputy Supreme Oracle, who was alleged to be an officer of the Supreme Camp by whom the certificate was issued, and who received and signed the application of Dr. Cameron, that it was rumored that Dr. Cameron was a user of liquor and a drug fiend. Mrs. Runner stated that she did not believe the rumor, and no notice of it was ever sent to the Board of Supreme Managers of the society. The trial judge submitted the question of notice and estoppel to the jury, and it is upon this that several of the assignments of error are based.

KUHN, C. J. (*after stating the facts*). The learned trial judge in charging the jury said the following with reference to the claim of an estoppel:

"* * * The plaintiff further claims that, even though Dr. Cameron did make certain untrue statements touching his habits regarding the use of intoxicating liquors and certain named drugs, defendant is now estopped from interposing such defense, for the reason that Minnie D. Batemen, the recorder, informed Frederika C. Runner, deputy Supreme Oracle, about the habits and life of Dr. Cameron after his initiation in the local lodge, which was January 17, 1911, and before the delivery to him of the policy on January 22, 1911. Now, if you are satisfied by a fair preponderance of the evidence, and the burden is upon the plaintiff to satisfy you of this claim first, if you are satisfied by a fair preponderance of evidence that Minnie D. Bateman did inform Frederika C. Runner that Dr. Cameron was in the habit of drinking intoxicating liquors and used drugs before the delivery to him of the certificate or policy, then the defendant would be estopped from interposing such matters as a defense to the recovery upon the policy."

The only testimony in support of this claim is that of Minnie Bateman, which is as follows:

"*Q.* Now, Mrs. Bateman, what did you tell Frederika C. Runner after the initiation and before the delivery of the policy?

"*Mr. Kelley:* I object to it as immaterial and for the reasons before stated.

"*The Court:* Take the answer.

"*Mr. Kelley:* Exception.

"*A.* I told her that it had been rumored about the doctor's condition and the circumstances.

"*Q.* What did you tell her?

"*A.* That he was a user of liquor and was a drug fiend.

"*Q.* What did she say?

"*A.* She didn't believe it she said.

"*Q.* (showing witness a paper). Did she sign that policy afterwards?

"*A.* She did."

We are of the opinion that there is not sufficient testimony in this record upon which the claim of estoppel could be based, and that therefore the trial judge erred in submitting that question to the jury. The testimony, in our opinion, was incompetent as hearsay. All the knowledge that Mrs. Bateman claims to have was as she states a rumor that Cameron was a user of liquor and a drug fiend. Mrs. Runner, the representative of the Supreme Camp, at the time had the sworn, unequivocal statement of the assured in his application which had been passed upon and accepted by the Supreme Camp. A mere rumor communicated to her was not such knowledge as could be made the basis of an estoppel. The plaintiff having asserted a waiver and estoppel, the burden of proving knowledge on the part of the defendant rested upon her. This, in our opinion, she has failed to do.

Assignments of error are also based on the failure of the court to grant the defendant's motion for a

directed verdict and because of the failure of the court to grant the motion for a new trial on the ground that the verdict was against the weight of the evidence. The disputed questions of fact were submitted to the jury, and we are not satisfied that this was so clearly against the weight of the evidence as to warrant us in overruling the action of the trial court in denying a motion upon this ground. In our opinion, the questions of fact were properly submitted to the jury. However, the case should be reversed for the error before referred to.

The judgment is reversed, and a new trial granted, with costs to the appellant.

STONE, OSTRANDER, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.